IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND VON RHINE, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 09-6093(JBS/AMD) |
| CAMDEN COUNTY SHERIFF's OFFICE, et al. | **OPINION** |
| Defendants. | |

APPEARANCES:

Jacqueline M. Vigilante, Esq.
THE VIGILANTE LAW FIRM, P.C.
99 North Main Street
Mullica Hill, N.J. 08062
    Attorney for Plaintiff

Sherri L. Schweitzer, Esq.
County Counsel
By:  Howard Lane Goldberg, Esq.
    First Assistant County Counsel
OFFICE OF COUNTY COUNSEL
520 Market Street
Camden, N.J. 08102-1375
    Attorney for Defendants

**SIMANDLE**, Chief Judge:

I.    **INTRODUCTION**

Plaintiff Raymond Von Rhine, an employee of the Camden

County Sheriff's Department, brings this action against the

Office of the Sheriff of Camden County, William Fontanez (former

Acting Sheriff and current Undersheriff of Camden County) in his

individual capacity, and Charles Billingham (Sheriff of Camden

County) in his individual capacity.  Plaintiff alleges that the
Sheriff's Office and the individually named Defendants created a
hostile work environment and engaged in retaliatory acts that
adversely affected the terms and conditions of Plaintiff's
employment.  Compl. ¶ 1.  This conduct, Plaintiff alleges,
violated his First and Fourteenth Amendment rights, and in turn
is actionable pursuant to 42 U.S.C. § 1983.  Plaintiff further
alleges violations of the New Jersey Conscientious Employee
Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19, over which this
Court has supplemental jurisdiction.

Before the Court is a motion for summary judgment by
Defendants. [Docket Item 26.]  For the reasons set forth herein,
the motion will be granted because Plaintiff fails to point to a
dispute of fact over whether his allegedly adverse employment
action, a transfer to a less desirable department within the
Sheriff's Office, was causally related to any protected activity.


## II.  BACKGROUND[1]

### A. Summary of Complaint

Plaintiff alleges that the Defendants retaliated against him

_____

[1] As the action is before the Court on Defendants' motion for
summary judgment, the Court is obligated to credit Plaintiff's
evidence and to draw all reasonable inferences in his favor.  The
Court's description of the facts will convey the factual
background in a light most favorable to Plaintiff where there are
factual disputes.

for protected activity and discriminated against him by transferring him out of the Special Investigations Bureau into a different department in the Camden County Sheriff's Office in October of 2008.  Plaintiff seeks relief in his Complaint through seven counts against three Defendants.  Counts I and V relate exclusively to Defendant Undersheriff Fontanez in his individual capacity.  Counts VI and VII relate exclusively to Defendant Sheriff Billingham in his individual capacity.  Counts II and III relate exclusively to Defendant Camden County Sheriff's Office. All six of the abovementioned counts allege a constitutional violation actionable under 42 U.S.C. § 1983.  Additionally, Plaintiff seeks relief against all three Defendants for violation of CEPA in Count IV.

As relates to Defendant Fontanez, Count I alleges a violation of Plaintiff's First Amendment right to free speech, pursuant to § 1983.  In that Count, Plaintiff alleges that Undersheriff Fontanez caused Plaintiff to be transferred out of his preferred department in the Sheriff's Office in retaliation for Plaintiff's "complaining about the harassment and hostile work environment, about the threatening conduct of S.O. Lovern and the threatening and intimidating conduct of defendant Fontanez."  Compl. ¶¶ 80-87.  Similarly, in Count V, Plaintiff alleges a violation of his First Amendment right to free

association, again created when Defendant Fontanez allegedly
retaliated (by causing his transfer) against Plaintiff because of
Plaintiff's association with his union.  Id. at ¶ 107.

As relates to Defendant Billingham, Plaintiff similarly
claims that Sheriff Billingham violated Plaintiff's First
Amendment right to free speech (Count VI) and association (Count
VII) by permitting Plaintiff's transfer to go through despite
being on notice of the retaliatory nature of the transfer.  Id.
at ¶¶ 115-119, 122-128.

As relates to Defendant Camden County Sheriff's Office,
Plaintiff alleges municipal liability under § 1983 against the
Office under two theories: claiming a violation of the Equal
Protection Clause of the Fourteenth Amendment (Count II) and a
violation of the First Amendment (Count III).  Compl. at ¶¶ 88-
100.

Finally, Count IV of the Complaint alleges, on behalf of all
Defendants, violations of the New Jersey Conscientious Employee
Protection Act ("CEPA"), N.J. Stat. Ann. § 43:19-3.
Specifically, Plaintiff alleges that Defendants retaliated
against Plaintiff for his objection to participating in an
illegal practice and for testifying against then-acting Sheriff
Fontanez, conduct Plaintiff alleges is protected under CEPA.  Id.
at ¶¶ 101-104.

4

### B. Factual Background of the Case

Plaintiff Raymond Von Rhine was hired as a Camden County Sheriff's Officer on October 28, 2000.  Von Rhine Dep. 22:16-22. In 2004, Plaintiff bid on and received a position in the Court Security Bureau, which he held until the fall of 2006.  Id. 41:20-42:2.  As of the fall of 2006, Plaintiff was serving as the Vice-President of Local 277 of the New Jersey Policemen's Benevolent Association ("the Union").  Id. 48:15-18.

In the late summer of 2006, Plaintiff applied for a transfer into the Special Investigations Bureau ("SIB").[2]  Id. 84:3-5. Positions in SIB were desirable because they offered greater potential for overtime, free parking, an unmarked squad car, plainclothes dress, and flexible scheduling.  Id. 39:20-40:7.

At that time, (from May 2006 until December 2006), Defendant Undersheriff Fontanez was serving as the acting Sheriff pending the election of a new permanent sheriff.  Fontanez Dep. 7:18-21. On September 25, 2006, Plaintiff received notice from Undersheriff Fontanez that Plaintiff's request for transfer to the SIB had been granted, with the transfer subsequently

---

[2] The Special Investigations Bureau was formed in 2007 via the merger of the Special Investigations Unit and Missing Persons Intelligence.  Fontanez Dep. 39:13-22.  However, many witnesses use the designations "SIB" and "SIU" interchangeably.  For brevity and clarity, the Court will refer to the unit as SIB hereafter.

occurring on October 2, 2006.  Compl. ¶¶ 11, 17.  Plaintiff was
one of sixteen other officers who were transferred to new
positions at that time.  Defs.' Statement of Facts ¶ 6 n. 2;
Moore Dep. 21:12-15.

Plaintiff and several other members of the local union
believed that these transfers did not comply with Camden County's
Collective Bargaining Agreement ("the CBA") with Local 277.  Von
Rhine Dep. 60:12-62:12; Billingham Dep. 27:4-9, Mogck Dep. 19:13-
18.  Specifically, the transfer was improper because of its
timing.  Under the terms of the CBA, the Sheriff's Office could
transfer employees into and out of bidded positions only at the
start of a new year, and then only if it provided notice of the
transfers in October.[3]  Von Rhine Dep. 25:1-26:4.  In other
words, Plaintiff was granted the transfer he requested, but in a
manner he was not expecting, which he believed violated the CBA.

On the day following the announcement of the transfers, the
Union filed a grievance against Undersheriff Fontanez for
violating the CBA.  Von Rhine Dep. 67:16-25.  The Union grievance

---

[3] Within the Camden County Sheriff's Department there are two
types of position.  Bidded positions (such as Plaintiff's former
position in Court Security) are available to all officers, and
are allotted on the basis of seniority according to bid.
Nonbidded positions (such as positions within the SIB) are filled
on appointment by the Sheriff.  Von Rhine Dep. 29:16-30:15, 37:1-
9.

escalated beyond the local level, and Plaintiff ultimately appeared before the Public Employee Relations Council ("PERC") in Trenton to give testimony.  Id. 64:20-65:22.[4]

On September 27, 2006, two days following the announcement of the transfers and before Plaintiff's transfer was completed, Defendant Fontanez contacted Plaintiff and Officer Conway, another union official transferred into the SIB, and directed them to file a grievance against the Union's grievance, or they "wouldn't be considered for any desirable position in the Sheriff's Department."  Id. 74:4-8; Compl. ¶ 15.

Around this time, the Union learned that Defendant Fontanez had instructed the superior officers working under him in the Sheriff's Office to start driving a wedge between the Union's membership and their leadership.  Id. 75:21-76:6.  In response to these alleged acts, in 2007 the Union filed an unfair labor practice charge against Undersheriff Fontanez.  Fontanez Dep. 92:21-24, 93:1-4.  Through his leadership role in the Union and

---

[4] Defendant submitted the certification of Howard Wilson, Esq., former Assistant County Counsel for the County of Camden, which included Mr. Wilson's certification that the union grievance filed in October of 2006 did not involve witness testimony, and that therefore Plaintiff was not called upon to offer any such testimony for this grievance.  However, because Plaintiff testified, instead, that he did offer testimony at a PERC hearing on this grievance, the Court must credit Plaintiff's version of events on this motion for summary judgment.  As will be made clear below, the dispute is not material.

his personal role as the alleged victim of Undersheriff Fontanez's intimidation, Plaintiff was involved in the filing of the charge and subsequently testified before PERC regarding the unfair labor practice charge.  Von Rhine Dep. 77:19-21; Fontanez Dep. 93:13-24, 94:1-7, 98:2-5, 104:2-23.

In the spring of 2007, Plaintiff Von Rhine, along with Officer Conway, also initiated an internal Union complaint against Undersheriff Fontanez, who was a retired Union member receiving union benefits.  Fontanez Dep. 106:20-108:24. Following a Union hearing at which Undersheriff Fontanez was present, the Union membership in attendance voted to remove Undersheriff Fontanez from the Union.  O'Donnell Dep. 69:15-16. As a consequence of his removal, Undersheriff Fontanez's dependents lost their Union-provided vision and prescription drug benefits.  Fontanez Dep. 118:5-11, Eife Dep. 38:5-15. Undersheriff Fontanez was "upset" and "angered" by the Union's move to terminate his membership, and Defendant Sheriff Billingham states that he believes that the incident continues to color Defendant Undersheriff Fontanez's views of the Union. Billingham Dep. 42:14-43:24.

Following his transfer into the SIB, Plaintiff testified that he experienced harassment by at least one other officer, which he contends was in retaliation for his participation in the

8

aforementioned Union proceedings.  Plaintiff was called a "rat"
by his immediate supervisor, Sergeant O'Donnell, and other
officers.  Von Rhine Dep. 85:19-23.  Officer Lovern, another
officer in the SIB, posted doctored copies of Plaintiff's
engagement photo around the SIB depicting Plaintiff and his
fiancé as an Orthodox Jewish couple and as a homosexual couple.
Id. 133:3-134:15.  Officer Lovern also left magazines with
articles referencing neo-Nazis on Plaintiff's desk, which
Plaintiff understood to be in reference to his German origins.
Id. 137:2-140:11.  Additionally, beginning in April 2007, Officer
Lovern pointed and occasionally shot a pellet gun and later a BB
rifle at Plaintiff and Officer Conway on approximately five
occasions over the following eight months.  Id. 88:21-89:2,
89:21-25, 96-99, 115:17-25, 126:23-25.  These guns were
indistinguishable from real guns and caused Plaintiff to "fear
for his life."  Id. 100:17-19.

Plaintiff did not report Officer Lovern's conduct to his
direct superiors.  Von Rhine Dep. 105:1-106:6.  However, in
January of 2008 Plaintiff, Officer Conway and their union
president met with Sheriff Billingham at which time Plaintiff and
Officer Conway complained about Officer Lovern's conduct.[5]  Id.

---

[5] Plaintiff waited eight months to report Officer Lovern's
conduct because he "was trying not to get the guy in trouble."

121:6-15.  As a result of this meeting, Defendant Sheriff Billingham referred the complaint to the Camden County Prosecutor's Office for investigation into whether criminal charges should be brought.  Id. 131:14-18.  Thereafter, Sheriff Billingham referred the matter to Internal Affairs, which investigated Plaintiff's allegations and ultimately brought administrative charges against Officer Lovern; he was disciplined with a short suspension, which he served by using some saved time off days.  Billingham Dep. 69:5-8.

In October 2008, Chief Gorman informed Plaintiff that he was being transferred from the SIB to the Probation Department in Cherry Hill, which Plaintiff considered to be a less desirable position.  Von Rhine Dep. 162:11-14.

According to the parties involved in the decision to transfer Plaintiff out of SIB, Plaintiff was chosen as a result of a performance ranking process that did not involve the subjective input of Defendant Fontanez.  Defendant Sheriff Billingham indicated to Lieutenant Moore and Sergeant O'Donnell, the supervising officers in the SIB, that every year he wanted to transfer a few officers out of SIB and replace them with other officers in different departments, with the specific individuals

---

Von Rhine Dep. 118:25-119:3, 120:17-22.

to be transferred left up to Moore.  Billingham Dep. 19:1-13.  To
that end, Billingham and Fontanez asked Moore to compile a list
ranking the officers in the SIB from lowest to highest, as a way
of indicating which officers would be easiest to lose and which
would be hardest to lose.  Moore Dep. 44:9:20 ("they asked me for
my opinion if you were to lose anybody, who would you . . . Who
would you rank – if I had to transfer guys out, who would you
prefer to stay.")  Moore said that he and Sergeant O'Donnell
concluded that Plaintiff and two other officers (Officer Mejias
and Officer Fabian) were the three lowest ranked officers.  Id.
44:3-8.  Billingham described this process as being a
recommendation of Moore, while Moore objected to the term
"recommendation" but instead characterized it as merely ranking
the SIB officers in response to his superiors' request, but not
actively "recommending" that any specific officer be transferred.
Billingham Dep. 77:9-24; Moore Dep. 44:13-14.

Then, Defendant Fontanez took this ranked list and presented
two or three names from SIB (along with other departments) "that
the commander [of SIB, Lieutenant Moore] felt he could spare" to
Captain Gorman, who was tasked with selecting the officers to be
transferred to staff the new Probation department in Cherry Hill.
Gorman Cert. § 12.  On this basis, Captain Gorman selected
Plaintiff and Officer Mejas in October of 2008 to be transferred

11

to Probation.  Id.  Sheriff Billingham approved the transfer of these two officers "because the commander thought that they [the transfers] were in the best interest of the bureau."  Billingham Dep. 77:12-13.

Plaintiff testified that Captain Gorman told him, in October of 2008, that "it was Fontanez's decision, it was Fontanez transferring you . . . ."  Von Rhine Dep. 172:15-17.  Plaintiff also adduces evidence that an Officer Greenwood, assigned to some other department in the Sheriff's Office, at some unknown date perhaps as early as May of 2008, overheard parts of a conversation between Undersheriff Fontanez and another officer in which Fontanez indicated that people he did not like were going to be transferred out of SIB, and that he heard Fontanez start to list some names; at some unknown time later that same evening Greenwood heard Fontanez say Plaintiff's name.  Greenwood Dep. 27:12-16.  On the basis of this evidence, Plaintiff contends that his transfer was a result of retaliatory conduct by Undersheriff Fontanez and Sheriff Billingham based on his initial complaints surrounding the 2006 transfers and his subsequent complaints of harassment.  Compl. ¶ 76-79.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate when the record shows that there is no "genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In establishing whether there is a disputed issue of material fact, the Court must view the evidence in the light most favorable to the nonmoving party. "The nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 255 (1986)).  The Court's role at this stage is "not . . . to weigh the evidence and to determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 447 U.S. at 249.  However, the mere existence of a "scintilla of evidence" in support of the Plaintiff's position will be insufficient to defeat a motion for summary judgment; there must be evidence "on which the jury could reasonably find" for the Plaintiff. Id. at 252.

This standard requires the plaintiff to point to more than the mere existence of "some alleged factual dispute between the parties;" it requires that plaintiff point to some "genuine issue of material fact." Id. at 247-248.  Only disputes over facts "that might affect the outcome of the suit under the governing law" constitute material facts sufficient to preclude the entry

13

of summary judgment.  Id. at 248 (referencing 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2725 (3d ed. 2912)).  There is no issue for trial unless there is sufficient probative – as opposed to merely colorable – evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 249-50 (citing First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-90 (1968); Dombrowski v. Eastland, 387 U.S. 82, 87 (1967)).


## IV.  DISCUSSION

The Court begins its analysis by reviewing Plaintiff's claims under § 1983, first considering the First Amendment free speech claim against Defendant Fontantez in Count I, and next turning to the First Amendment free speech claim against Defendant Billingham in Count VI.  The Court will then consider the First Amendment free association claims against the individual Defendants in Counts V and VII.  After considering the § 1983 individual liability claims, the Court will turn to Plaintiff's municipal liability claims against Defendant Camden County Sheriff's Office.  Finally, the Court will turn to evaluating Plaintiff's claims under the New Jersey CEPA statute.

### A.   Individual § 1983 First Amendment Free Speech Claims

The Court first considers Plaintiff's free speech claims

14

against the individual Defendants Fontantez and Billingham in Counts I and VI.  The Court concludes that summary judgment is warranted as to these claims because no dispute of fact exists as to whether either Defendant caused any alleged deprivation of First Amendment rights.

To establish personal liability against an official on the merits in a § 1983 action, a Plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (referencing Monroe v. Pape, 365 U.S. 167 (1961)).

Respondeat superior liability is not allowed in 42 U.S.C. § 1983 actions.  See Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 692 (1978) (denying the theory of respondeat superior in § 1983 actions after close examination of the text and legislative history of the statute).  Therefore, Plaintiff must prove that the individual Defendants caused the violation of his rights by demonstrating that the Defendants were personally involved in causing Plaintiff's harm or by acquiescence.

To demonstrate personal involvement by a supervisor, Plaintiff must show that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates violations." A.M. ex rel. J.M.K.

15

v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586
(3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995)).

### 1. Plaintiff's free speech claim against Fontanez

In Count I, Plaintiff alleges that Defendant Fontanez
retaliated against Plaintiff's protected speech activities of
complaining about Officer Lovern and his general harassment in
the office to Sheriff Billingham in January of 2008 and
subsequently participating in the Internal Affairs investigation
into Officer Lovern.  Plaintiff alleges that the adverse
employment action he suffered was to be transferred out of SIB to
Probation in October of 2008, and that this act was motivated, in
part, by Plaintiff's protected activity.

For Plaintiff to make a retaliation claim under § 1983
predicated on the First Amendment, he must show (1) that he
engaged in a protected activity; (2) that Defendant's adverse
retaliatory action was sufficient to deter a person of ordinary
firmness from exercising his or her rights; and (3) that there
was a causal link between the protected activity and the
retaliatory action.  Lauren W. ex rel. Jean W. v. DeFlaminis, 480
F.3d 259, 267 (3d Cir. 2007); see also Baldassare v. State of
N.J., 250 F.3d 188, 195 (3d Cir. 2001).  Defendants may defeat
the claim of retaliation by showing that they would have taken

the same action even if Plaintiff had not engaged in the protected activity.  See <u>DeFlaminis</u>, 480 F.3d at 267; <u>see also</u> <u>Ambrose v. Twp. of Robinson</u>, 303 F.3d 488 (3d Cir. 2002).  The question of whether Plaintiff engaged in a protected activity is a question of law, and is therefore for the Court to decide. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006). The remaining questions, however, are questions of fact.  <u>Id.</u>

Assuming that Plaintiff can point to a dispute of fact that some of his speech activities alleged constitute protected activities, and that being transferred out of SIB to Probation would deter a person of ordinary firmness from expressing himself, the Court concludes that summary judgment is still warranted against Count I of the Complaint because Plaintiff fails to raise a dispute of fact over whether his transfer was causally related to any allegedly protected speech activities undertaken in the SIB.  It is undisputed on this record that Lieutenant Moore ranked Plaintiff among the three lowest when he was asked to rank the SIB officers by Defendants in October of 2008.  Moore offered detailed explanations for why he considered Plaintiff to be less valuable to the department than nearly all of the other officers, including on the basis of the other officers' greater number of arrests, familiarity with Camden, and being bilingual.  Moore Dep. 26:19-39:3.  He further explained

that he also ranked Officer Mejias low on the same scale.  Id.
41:5-18.  There is no evidence in this record that Defendant
Fontanez influenced Moore's ranking of the officers or his
determination that Plaintiff and Officer Mejias were "on the
cutting block."  Id. at 41:8.

Further, there is no dispute on the record that Defendant
Sheriff Billingham approved the transfer decision for Plaintiff
and Officer Mejias based on Lieutenant Moore's "recommendation"
or "ranking."  Billingham Dep. 77:10-13.  Further, Gorman
certified that he transferred Plaintiff and Officer Mejias in
October of 2008 based on the list of names from the commander of
each department that he felt he could spare and that Defendant
Fontanez was not involved in the designation of the personnel to
be transferred.  Gorman Cert. ¶ 12.  Plaintiff's deposition
testimony that Captain Gorman told him in October of 2006 that
"it was Fontantez's decision" does not raise a dispute of fact on
this point.  Even were the Court to consider this hearsay
testimony of what a non-party allegedly told Plaintiff,[6] the

---

[6] Though the fact that this testimony is hearsay under Fed. R.
Evid. 801(c) not subject to an exception, and is therefore
inadmissible in opposition to a motion to dismiss is an
independent, alternative ground for the Court's conclusion that
no dispute of fact exists on this point.  See Pamintuan v.
Nanticoke Memorial Hosp., 192 F.3d 378, 387 (3d Cir. 1999)
(holding that it is not proper to consider, on summary judgment,
evidence that would not be admissible at trial).

statement is not materially inconsistent with Gorman's certification that Fontanez was not involved in the <u>selection</u> of <u>which</u> officers were to be transferred, even if he was a driving force behind the determination that some officers, selected by Moore and the other commanders, were to be transferred at that time.  In light of the testimony of all individuals involved in the decisionmaking process, no factfinder could reasonably conclude, based on Plaintiff's hearsay testimony, that Defendant Fontanez not only facilitated the transfer process but actively selected Plaintiff for transfer in retaliation for his speech activities.

Similarly, a factfinder could not reasonably conclude, based on the ambiguous testimony of Officer Greenwood, that Fontantez caused the transfer in October of 2008, merely because Greenwood claims to have overheard Fontanez state that there were people in SIB that Fontanez did not want there, and then at some unidentified time later, not even necessarily in the same conversation, say Plaintiff's name. Plaintiff's speculation that the conversations Officer Greenwood allegedly overheard were connected (and the further inference that if Defendant Fontanez did not want Plaintiff in SIB, he later took action to have him transferred) amounts to nothing more than speculation, which is insufficient to raise a dispute of fact sufficient to survive

summary judgment.  <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238,
252 (3d Cir. 1999); <u>Sterling Nat'l Mortgage Co. v. Mortgage
Corner, Inc.</u>, 97 F.3d 39, 44 (3d Cir. 1996) (stating that "[m]ere
speculation about the possibility of the existence of such facts"
does not raise triable issue to defeat motion for summary
judgment).  Consequently, the Court will grant Defendants' motion
for summary judgment as to Count I.

　　　　2.  <u>Plaintiff's free speech claim against Billingham</u>

　　　Similar to Plaintiff's free speech claim against Defendant
Fontanez, in Count VI of the Complaint, Plaintiff alleges that
Defendant Billingham approved of Plaintiff's transfer out of SIB
while being deliberately indifferent to Defendant Fontantez's
retaliatory motive in causing the transfer to occur.  As with
Count I, the Court concludes that there is no dispute of fact
that Defendant Billingham's actions were caused by or
deliberately indifferent to any retaliatory animus.

　　　The Court has already concluded that no material dispute of
fact exists regarding the involvement of Defendant Fontanez in
the selection of Plaintiff for transfer.  The Court further
concludes that no dispute of fact exists sufficient to establish
that Defendant Billingham could be liable under a theory of
supervisory liability through his knowledge of and acquiescence
in his subordinates' violations.  Billingham's uncontradicted

20

testimony is that he approved Plaintiff's transfer based on the understanding that it was the result of Lieutenant Moore's "recommendation" rather than any awareness of an involvement by Fontanez.  Plaintiff points to evidence in the record that Defendant Billingham knew that Fontanez was angry as a result of the union's actions, and that Plaintiff had complained about harassment by other officers in the office.  Billingham Dep. 42:16-43:16.  None of this evidence, however, raises a dispute of fact that Billingham had notice of or acquiesced to any retaliatory action taken by any other officer against Plaintiff.  Consequently, the Court will grant Defendants' motion for summary judgment as to Count VI.

**A.    Free Association Claims**

In Counts V and VII, Plaintiff alleges a violation of his constitutionally guaranteed right to freedom of association.  The freedom of association is inherently linked to the freedom of speech.

> An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.  According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the

21

majority.

Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984) (citations

omitted).  Consequently, the Courts have long understood as

implicit in the right to engage in activities protected by the

First Amendment a corresponding right to associate with others.

Id.

Plaintiff alleges that Defendant Fontanez caused Plaintiff's

transfer in retaliation for Plaintiff's protected activities of

associating with his union and Defendant Billingham permitted

such retaliatory transfer while being deliberately indifferent to

its retaliatory nature.  The Court has already concluded that

there is no dispute of fact in the record as to the causal nexus

between any protected speech activity and Plaintiff's transfer;

the Court similarly so concludes with regard to Plaintiff's

association activities.  Accordingly, the Court will grant

Defendants' motion for summary judgment as to Counts V and VII.


**B.   Plaintiff's Municipal Liability Claims Against the
       Camden County Sheriff's Office (Counts II and III)**

1.   The Threshold Issue of Whether the Camden County
     Sheriff's Office has Capacity to be Sued Under §
     1983

As to Plaintiff's claims for § 1983 municipal liability,

Defendants argue for summary judgment on several grounds.

Defendants begin by arguing that summary judgment should be entered against Plaintiff's claims in Counts II and III against Defendant Camden County Sheriff's Department because the Sheriff's Office is not an entity capable of being sued under New Jersey law, but is rather merely an agency of Camden County, which is not a party to this action.

Plaintiff responds in opposition with three points.  First, Plaintiff argues that Defendants have waived this defense by failing to raise it in their responsive pleadings or by moving to dismiss on this basis, and by admitting in their Answer that the Sheriff's Office is "a political subdivision of the State of New Jersey and is subject to the jurisdiction of this Court."  Compl. and Answer at ¶ 6.  Second, Plaintiff argues that by suing the individual Defendants Fontanez and Billingham in their official capacities, Plaintiff has, de facto, sued Camden County, the proper municipal defendant in this action.  Third, Plaintiff argues that to the extent that the Court concludes that Defendants have not waived the argument and Plaintiff has not effectively sued Camden County as the proper municipal defendant, Plaintiff requests leave to amend his pleadings to add Camden County as a defendant pursuant to Fed. R. Civ. P. 15(a)(2).

The Court initially notes that the law appears unsettled in this District as to whether or not a Sheriff's Office, standing

alone unaccompanied by the county in which it sits, is an appropriate entity to serve as a defendant for § 1983 or state law liability.  See e.g., McLaughlin v. County of Gloucester, Civ. No. 06-4494, 2008 WL 700125 (D.N.J. Mar. 12, 2008) ("sheriff's departments cannot be sued in conjunction with a county because they are merely arms of the county, not separate entities"); Open Inns, Ltd. v. Chester County Sheriff Dept., 24 F. Supp. 2d 410, 417 n.13 (E.D. Pa. 1998) ("Chester County Sheriff's Department is a sub-unit of Chester County which cannot be sued because it is merely an arm of the local municipality, and thus is not a separate judicial entity"); but see, contra, Tortorella v. City of Orange, Civ. No. 02-4819 2007 WL 151396 at *3 (D.N.J. Jan. 17, 2007) (permitting suit to proceed against municipal police department).[7]  However, as Plaintiff does not oppose Defendants' motion on this basis, the Court assumes without deciding that a sheriff's department lacks the capacity

---

[7] Indeed, the Court further notes that a county sheriff's office's capacity to be sued is not necessarily analogous to a municipal police department's capacity to be sued, as the office of the sheriff, under New Jersey law, is a constitutionally created office whereas a municipal police department is created only by local municipal ordinance.  See N.J. Stat. Ann § 40A:14-118 (establishing municipal police department as arm of municipality); N.J. Const. art. VII, § 2 (establishing that county sheriff shall be elected by the people of the county in general election for term of three years).  The parties do not address this issue.

to be sued under Fed. R. Civ. P. 17(b).

Secondly, the Court concludes that Defendants have not waived the capacity defense.  Federal Rule of Civil Procedure 12(h) governs waiver of defenses in federal court.  That rule provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5)" if the party fails to raise the defense in a motion to dismiss under Rule 12 or include it in a responsive pleading.  Fed. R. Civ. P. 12(h)(1).  Thus, were Defendants' argument regarding the capacity of the Sheriff's Office to be sued one for lack of personal jurisdiction, venue, or defect of service of process, the Court agrees that Defendants would have waived the defense.  However, Defendants' argument is clearly that Plaintiff cannot, as a matter of law, sue a party under § 1983 that lacks capacity to be sued, which the Court notes Defendants may raise for the first time even at trial.  Fed. R. Civ. P. 12(h)(2).  That Defendants admitted that the Camden County Sheriff's Office is a political subdivision of the state and within the personal jurisdiction of the Court does not bar Defendants from now arguing that Plaintiff cannot seek damages under § 1983 as a matter of law.

Additionally, the Court agrees with Defendants that Plaintiff explicitly sued Defendants Fontanez and Billingham only in their individual capacities.  Therefore, the Court concludes

25

that Plaintiff's Complaint does not, as it is presently pled,

name Camden County as a Defendant.

Finally, the Court turns to Plaintiff's request for leave to

file an amended complaint substituting Camden County for the

Sheriff's Office.  Defendant opposes Plaintiff's request for

leave to amend his Complaint on the sole ground that it would be

futile because Plaintiff's arguments for municipal liability are

subject to summary judgment more broadly.  Therefore, the Court

will dismiss Counts II and III as to Defendant Camden County

Sheriff's Office and analyze Plaintiff's claims for municipal

liability as though they were alleged against Camden County

itself.  As explained below, because the Court concludes that

Defendants have demonstrated that amendment would be futile as to

Count III but not Count II, the Court will permit Plaintiff to

file a motion for leave to amend as to Count II only.

> 2.   Section 1983 Municipal Liability

Plaintiff's federal claims against the Camden County

Sheriff's Office arise under 42 U.S.C. § 1983, which provides

that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall

be liable for redress . . .

42 U.S.C. §1983.  Such municipal liability exists only where

execution of the municipality's policy or custom, whether made by

lawmakers or decisionmakers whose edicts may fairly represent

official policy, inflicts the injury.  See Monell v. Dep't of

Social Services of N.Y., 436 U.S. 658; 694 (1978).

> Not all state action rises to the level of a custom or
> policy.   A  policy  is  made  "when  a  decisionmaker
> possess[ing]  final  authority  to  establish  municipal
> policy  with  respect  to  the  action  issues  a  final
> proclamation, policy or edict." Kneipp v. Tedder, 95
> F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City
> of  Cincinnati,  475  U.S.  469,  481  (1986)  (plurality
> opinion)).   A  custom  is  an  act  "that  has  not  been
> formally approved by an appropriate decisionmaker," but
> that is "so widespread as to have the force of law." Bd.
> of County Comm'rs of Bryan County, Okla. V. Brown, 520
> U.S. 397, 404, (1997).

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir.

2003).  Once a policy or custom has been shown to exist, it must

then be shown that the allegedly unconstitutional conduct

causally results from that policy or custom.  In Natale, the

Third Circuit established three situations in which such a causal

link could be shown:

> (1) The first is where "the appropriate officer or entity
> promulgates  a  generally  applicable  statement  of  policy
> and  the  subsequent  act  complained  of  is  simply  an
> implementation  of  that  policy."  Bryan County,  520 U.S.
> at 417 (Souter, J., dissenting).  (2) The second occurs
> where "no rule has been announced as policy but federal
> law  has  been  violated  by  an  act  of  the  policymaker
> itself." Id.  (3) Finally, a policy or custom may also

exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'" <u>Id.</u> at
417-418, 117 S.Ct. 1382 (quoting <u>City of Canton, Ohio v.
Harris</u>, 489 U.S. 378, 390 (1989) . . .

<u>Natale</u>, 318 F.3d at 584 (numbers added).  Thus, for Plaintiff to

allege municipal liability under § 1983, he must show evidence of

(1) a specific policy or custom, (2) the action or inaction of

the appropriate final decisionmaker, and (3) a causal relation

between the harm suffered and the policy or custom.

Plaintiff, in Count III of his Complaint, alleges that the

Camden County Sheriff's Department had notice of the retaliatory

treatment of Plaintiff following his protected activities and of

the retaliatory nature of Plaintiff's transfer out of SIB.

Compl. ¶¶ 89-90, 96-97.  He further contends that the

Department's failure to intervene constituted a ratification of

the retaliatory conduct by the final decisionmaker, Sheriff

Billingham, which evinced a practice or custom to deprive

individuals of their constitutional rights.  Compl. ¶¶ 90-91, 97.


Defendants, conversely, argue that Plaintiff has failed to

identify with sufficient particularity a distinct policy or

28

custom causing the alleged injury.[8]  Further, they claim the
Plaintiff has failed to demonstrate the causal link between the
alleged custom and the alleged injury.

It is Defendants' contention that proof of a single instance
of alleged unconstitutional activity is not sufficient to impose
civil rights liability under the Monell rule unless there is also
proof of an existing unconstitutional policy or custom.  However,
in certain circumstances, a policy or custom can be established
when a subordinate's actions are ratified by the final
policymaker.

> A government frequently chooses a course of action
> tailored to a particular situation and not intended to
> control decisions in later situations.  If the decision
> to adopt that particular course of action is properly
> made by that government's authorized decisionmakers, it
> surely represents an act of official government "policy"
> as that term is commonly understood.  More importantly,
> where the action is directed by those who establish
> governmental policy, the municipality is equally
> responsible whether the action is to be taken only once
> or to be taken repeatedly.

Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (allowing

---

[8] The only possible municipal claim Defendants can identify is
the claim that Sheriff Billingham "ratified the conduct of
Defendant Fontanez which constitutes evidence of a policy,
practice, custom or procedure to deprive individuals of their
constitutional rights."  Br. in Supp. of Defs.' Mot. for Summ. J.
18.  However, Defendants contend that the "conduct of Defendant
Fontanez" is not identified, rendering that custom too vague to
be sufficient.  Brief in Supp. of Defs.' Mot. for Summ. J. 18.

§ 1983 liability where county sheriffs, under the immediate direction of a county prosecutor, performed an illegal search).

A municipality's policy or custom can be established by an authorized policymaker's approval of a subordinate's decision and the basis for it.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  This link exists because, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have "retained the authority to measure the official's conduct for conformance with their policies."  Id. (emphasis omitted).

Plaintiff, in his opposition brief, argues that the municipal policy or custom alleged is Sheriff Billingham's ratification of Undersheriff Fontanez's allegedly retaliatory decision to transfer Plaintiff out of the SIB.  Sheriff Billingham's decision, though not a long-term County employment policy, constituted the act of the municipality's final decisionmaker for such issues and would allow for municipal liability under the Supreme Court's rule from Pembaur.

Plaintiff's arguments are unavailing.  The Court has already concluded that no dispute of fact exists on which a factfinder could reasonably conclude that Plaintiff's transfer was caused by Defendant Fontanez or that the transfer was motivated by retaliatory animus.  Therefore, even assuming that Defendant

30

Sheriff Billingham is the County's policymaker on issues of employment within the Sheriff's Office,[9] there is no dispute of fact in the record on which a factfinder could reasonably conclude that Defendant Billingham's decision to approve Plaintiff's transfer out of SIB to Probation violated Plaintiff's rights under the constitution, and therefore the County could not be liable for such act under § 1983.  The Court will, therefore, grant Defendants' motion for summary judgment as to Count III.

In Count II of his Complaint, Plaintiff alleges a violation of the equal protection clause of the Fourteenth Amendment.[10] Compl. ¶ 1.  However, Count II itself does not state Plaintiff's theory of liability for a Fourteenth Amendment violation.

Based on the fact that Plaintiff makes no pleadings alleging membership in a protected class, the Court interprets Plaintiff's Fourteenth Amendment allegation as one based on non-suspect class

---

[9] But see Cacciatore v. County of Bergen, Civ. No. 02-1404, 2005 WL 3588489 *4 (D.N.J. Dec. 30, 2005) ("Plaintiffs, therefore, must assume that because Ciccone is a sheriff in the County, who has some policymaking authority, any policies that he creates in the sheriff's office are considered County policy. This conclusion is misguided.")

[10] In the introduction to his Complaint, Plaintiff states that he "brings this action for damages . . . for hostile work environment and retaliation adversely affecting the terms and conditions of his employment, all in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment." Compl. ¶ 1.

equal protection. However, Defendants fail to address this claim
in either their supporting brief or their reply brief for the
present motion.  See Docket Items 26, 41.  As the Court has
concluded that it must dismiss the Count as to Defendant Camden
County Sheriff's Office for lack of capacity to be sued, the
issue is moot as to Defendants' instant motion for summary
judgment.  However, because Defendants have not demonstrated that
amendment of Plaintiff's Complaint to add Camden County as a
defendant as to Count II would be futile, the Court will permit
Plaintiff to file a motion for leave to amend as to this claim
only.

### A.    Plaintiff's Conscientious Employee Protection Act ("CEPA") Claim against All Defendants

1.   The CEPA Standard

In Count IV of his Complaint, Plaintiff alleges that all
Defendants engaged in retaliatory practices against him for his
role as a whistle-blower in violation of the New Jersey
Conscientious Employee Protection Act ("CEPA").  N.J. Stat. Ann.
§ 34:19.

CEPA, New Jersey's "whistle-blower" statute, prohibits an
employer from taking any retaliatory action against an employee
because the employee does any of the following:

a.   Discloses, or threatens to disclose to a
supervisor or to a public body an activity, policy or

32

practice of the employer, or another employer, with
whom there is a business relationship, that the
employee reasonably believes:

(1)   is in violation of a law, or a rule or regulation
promulgated pursuant to law, including any violation
involving deception of, or misrepresentation to, any
shareholder, investor, client, patient, customer,
employee, former employee, retiree or pensioner of the
employer or any governmental entity, or, in the case of
an employee who is a licensed or certified health care
professional, reasonably believes constitutes improper
quality of patient care; or

(2)   is fraudulent or criminal, including any activity,
policy or practice of deception or misrepresentation
which the employee reasonably believes may defraud any
shareholder, investor, client, patient, customer,
employee, former employee, retiree or pensioner of the
employer or any governmental entity;

b.     Provides information to, or testifies before, any
public body conducting an investigation, hearing or
inquiry into any violation of law, or a rule or
regulation promulgated pursuant to law by the employer,
or another employer, with whom there is a business
relationship . . .

c.     Objects to, or refuses to participate in any
activity, policy or practice which the employee
reasonably believes:

(1)   is in violation of a law, or a rule or regulation
promulgated pursuant to law . . .

(2)   is fraudulent or criminal, including any activity,
policy or practice of deception or misrepresentation
which the employee reasonably believes may defraud any
shareholder, investor, client, patient, customer,
employee, former employee, retiree or pensioner of the
employer or any governmental entity; or

(3)    is incompatible with a clear mandate of public
policy concerning the public health, safety, or welfare
or protection of the environment.

N.J. Stat. Ann. § 34:19-3.  In order to maintain a cause of action under subsections a. or c. of CEPA, a plaintiff must prove the following:

> (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;
> (2) that he or she performed whistle-blowing activity described in N.J.S.A. 34:19-4a, c(1) or c(2);
> (3) an adverse employment action was taken against him or her; and
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Kolb v. Burns, 727 A.2d 525, 530 (App. Div. 1999) (citing Falco v. Cmty. Med. Ctr., 686 A.3d 1212, 1221-22 (App Div. 1997)). Where a plaintiff alleges a violation of N.J. Stat. Ann. § 34:19-3b, however, the Court need not address the threshold question of whether a specific statute or regulation or clear expression of public policy would be violated if Plaintiff's allegations are true.  See Kolb, 727 A.2d at 530.  A retaliatory response to testimony before a public body is, in itself, a violation of a clear mandate of public policy because testimony before a public body concerning a violation of the law is "expressly 'protected' by CEPA."  Id.

New Jersey limits the scope of actionable "retaliatory" acts to the "discharge, suspension, or demotion of an employee, or other adverse action taken against an employee in the terms and

34

conditions of employment." Sunkett v. Misci, 183 F. Supp. 2d 691, 716 (D.N.J. 2002). However, the standard for employer liability is lower in the CEPA context, as New Jersey imposes respondeat superior liability upon employers. Sunkett, 183 F.Supp. 2d at 716 (citing Abbamont v. Piscataway Twp. Bd. of Educ., 650 A.3d 958, 966 (N.J. 1994)).

     1.   Plaintiff's CEPA Claims

Plaintiff makes three distinct claims of CEPA protected activity that he claims caused retaliatory conduct by Defendants. Plaintiff alleges (a) retaliation for his refusal to file a grievance against the Union, pursuant to 34:19-3(c); (b) retaliation for testifying as a witness in the "unfair labor practice matters", pursuant to 34:19(b); and (c) retaliation for testifying as a witness in the Union hall hearing, pursuant to 34:19(b).

Plaintiff alleges that he experienced retaliation (via his transfer to Probation in October of 2008) based on his refusal to file a grievance against the Union, his testimony as a witness before PERC hearings, and his testimony as a witness in a Union Hall meeting.

As to his first alleged whistle-blowing activity, Plaintiff states in his deposition that, when he called Acting-Sheriff Fontanez on September 27, 2006, Sheriff Fontanez told him that if

he didn't file a grievance against the Union's grievance, then Officer Von Rhine would no longer be considered for any of the desirable non-bidded positions.  Von Rhine Dep. 74:4-8. Plaintiff refused to comply, because Acting Sheriff Fontanez "was going against our collective bargaining agreement, the procedures."  Von Rhine Dep. 74:16-17.  Plaintiff correctly contends that a valid CEPA claim originates from Plaintiff's refusal to file a counter-grievance, as such "flat-out refusals" to engage in illegal activity are protected under CEPA.[11] Sunkett, 183 F.Supp. 2d at 716.

As to his second alleged whistle-blowing activity, Plaintiff points to his testimony as a witness against Acting Sheriff Fontanez regarding the Union grievance and the unfair labor practices discussed supra.  Plaintiff, in his deposition, states that he was twice called before the New Jersey Public Employment Relations Commission as a witness.  Plaintiff first appeared as a witness in the Union grievance concerning the transfers Undersheriff Fontanez's initiated in violation of the collective bargaining agreement.  Von Rhine Dep. 64:20-22; 65:2-22.

---

[11] Undersheriff Fontanez was attempting to illegally coerce Plaintiff into restricting his exercise of his free speech rights in violation of N.J. Stat. Ann. § 34:13A-5.4(a)(1) and (3).  The Court finds that Plaintiff's refusal to yield to this coercion and thus to file a false grievance against the union constitutes a refusal to engage in an illegal activity.

Plaintiff later appeared before PERC again as a witness against Undersheriff Fontanez in the unfair labor practice proceedings. Von Rhine Dep. 77:15-25, 80:10-14.

As regards his third alleged whistle-blowing activity, Plaintiff points to his initiation of and testimony in the Union proceedings that resulted in Undersheriff Fontanez's removal from the Union.  It is undisputed that Plaintiff testified against Defendant Fontanez at the Union hall hearing.  Fontanez Dep. 108:1-24.  However, neither filing a Union complaint nor testifying before a union is a protected activity under CEPA, since a union is not a public body.[12]  The charges Plaintiff filed were against Undersheriff Fontanez for violation of the Union's principles and bylaws.  The violation of the principles, bylaws, rules, or regulations of a union does not constitute a violation of a law, rule, or regulation promulgated pursuant to law within the CEPA context, and therefore reporting and testifying as to those violations cannot be protected under CEPA. As such, the Court finds that this claim is legally insufficient.

Defendants contend that, even if all of the above is assumed to be true, Plaintiff does not have a valid CEPA claim because he

---

[12] "Public body," as defined by N.J. Stat. Ann. § 34:19-2(c), refers to federal, state, or local entities.  From the statutory definition, it is clear that it does not apply to labor unions or other non-governmental organizations.

was not "retaliated" against within the meaning of the statute.
The Legislature defines "retaliatory action" within the CEPA
statute as "the discharge, suspension, or demotion of an
employee, or other adverse employment action taken against the
employee in the terms and conditions of employment."  N.J. Stat.
Ann. § 34:19-2e.   This provision has been interpreted by New
Jersey courts as requiring the adverse employer's action to have
either impacted the employee's "compensation or rank" or be
"virtually identical to discharge" to constitute retaliation
under CEPA.  <u>Klein v. Univ. of Med. and Dentistry of N.J.</u>, 871
A.2d 681, 691 (App. Div. 2005); <u>Hancock v. Borough of Oaklyn</u>, 790
A.3d 186, 193 (App. Div. 2002).

The Court finds, interpreting the facts in evidence
favorably to Plaintiff as the non-moving party, that there is no
genuine issue of material fact as to whether any retaliatory
action was caused by Plaintiff's protected activity.  While
transferring Plaintiff out of the SIB to probation might
constitute a sufficiently adverse action to suffice under the
statute, the Court has already concluded that there is no dispute
of fact that this adverse action was causally connected to
Plaintiff's protected conduct, because the undisputed facts of
record establish that Plaintiff was "recommended" for transfer in
October of 2006 by Lieutenant Moore for reasons unrelated to

Plaintiff's protected activity.  Therefore, no causal connection
exists between any whistle-blowing activity of Plaintiff's and
his adverse transfer to Probation.  The Court will, accordingly,
grant summary judgment with respect to the CEPA claims contained
in Count IV of Plaintiff's Complaint.


I.   **CONCLUSION**

For the reasons discussed above, the Court has found that
Plaintiff has failed to raise a dispute of fact over whether the
adverse action of transferring Plaintiff out of the SIB in
October 2006 was causally connected to any First Amendment or
CEPA protected activity.  Therefore, the Court has concluded that
summary judgment is warranted against Plaintiff's claim against
all Defendants.  The Court has further concluded that Defendant
Camden County Sheriff's Department should be dismissed as a
matter of law because that party lacks capacity to be sued under
§ 1983.  The Court has further concluded that Plaintiff will not
be granted leave to file an amended complaint substituting Camden
County as defendant with regards to Plaintiff's First Amendment
claims in Count III, because the Court has concluded that such
amendment would be futile.  However, the Court has not concluded
that such amendment would be futile as to Plaintiff's claim in
Count II.  Therefore, Plaintiff may file a motion for leave to

39

amend substituting Camden County as to Count II only.  In response, Defendants are free to oppose on futility grounds, arguing why Plaintiff's Equal Protection Clause claim is futile, which they did not adequately do on the instant motion.

The accompanying Order shall be entered.


**August 29, 2012**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge